UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 20-CR-20185

UNITED STATES OF AMERICA,
    *Plaintiff,*
v.

JOE LEWIS MCHOMES
    *Defendant.*
_____/

OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT
AND MOTION FOR DOWNWARD VARIANCE

The Defendant, JOE LEWIS MCHOMES, through counsel files his objections to Presentence Investigation Report "PSI" and Motion for Downward Variance and states the following:

## OBJECTIONS

1. The Defendant objects to the role assessment as described in Paragraphs 34 and 35 in the PSI. The criminal activity attributable to the Defendant involved a minor role.

2. It is the Defendant's position that he was induced, supervised and directed throughout the conspiracy by the co-defendant.

3. Although necessary to the fraudulent activity, his role was minor and unsophisticated.

4. Starting in August 2008 and continuing until around October 2018, the co-defendant engaged Mr. McHomes to participate in a scheme aimed at defrauding Summit Aerospace, Inc. The co-defendant was an employee of Summit. This involved the utilization of kickbacks and bribes, as well as the concealment of material information.

5. To execute the scheme and defraud Summit Aerospace while obtaining money, the co-defendant took on a supervisory role, directing Mr. McHomes actions, in furtherance of the conspiracy. Under this arrangement, Mr. McHomes, operating as J-CONN Solutions was instructed to falsely pose as a sales agent for Summit. The direction given to McHomes was clear: he was to feign securing contracts, agreements, and purchase orders from Al-Raha Group for Technical Services ("RGTS") in Saudi Arabia, specifically for the repair and return of aircraft parts.

6. In compliance with those directives, false and fraudulent invoices were prepared by the co-defendant, billing Summit Aerospace for commissions supposedly earned by Mr. McHomes through the acquisition of these contracts, agreements, and purchase orders. The co-defendant orchestrated and created numerous invoices utilizing his knowledge and understanding of the work done at Summit to manufacture false invoices.

7. The co-defendant further directed the process by ensuring that the J-CONN invoices were generated and Summit checks, payable to J-CONN, were obtained. Importantly, the co-defendant directed that the amounts on these checks remain under $10,000, facilitating Mr. McHomes' ability to cash them discreetly for amounts less than $10,000. This directing role underscores the intentional manipulation and control exerted by the co-defendant over Mr. McHomes in carrying out these deceptive actions.

8. Mr. McHomes, under the direction of the co-defendant, employed interstate wires, utilizing phone calls and emails, to communicate with other Summit Aerospace employees in order to secure the Summit commission checks. The co-defendant, acting as the orchestrator, directed Summit to dispatch these checks to Mr. McHomes through

FedEx. Upon receiving the Summit checks, Mr. McHomes, proceeded to cash them and then disbursed approximately fifty percent of the cash proceeds to the co-defendant.

9. Undersigned counsel would respectfully request that the court grant a two-level reduction for Minor Role pursuant to section 3B1.2 (b). The Defendant would then be seeking a two-level reduction pursuant to section 2D1.11 (a) which allows for a decrease in the base offense level for Mitigating Role adjustment for Level 32 offenses.

## REQUEST FOR DOWNWARD VARIANCE

1. Defendant has accepted responsibility for his actions, expressed remorse for committing the instant offense, and agrees with the factual recitations in the PSI.
2. The Defendant has cooperated with the government and made himself available which likely has impacted the co-defendant's change of plea.
3. Defendant does not dispute the factual basis of the offense.
4. 18 U.S.C. 3553(a) provides that the court impose a sentence that shall be sufficient, but not greater than necessary to comply with the purposes set forth in [3553(a)(2)] including (1) the nature and circumstances of the Offense and the history and characteristics of the Defendant (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense....(5) The need to provide the Defendant with needed educational or vocational training or medical care. In this case the goal of crafting a sentence that shall be sufficient but not greater than necessary will be met by a downward variance from the otherwise applicable guideline range determined by this Court.

## PERSONAL HISTORY AND CHARACTERISTICS

1. Mr. McHomes, while acknowledging his imperfections, is a victim of profound emotional turmoil throughout his life. The roots of his actions lie in a history marked by repeated episodes of physical and emotional abuse, poverty, and substance abuse.

2. During his formative years in a household with eleven siblings, financial struggles forced Mr. McHomes to start working alongside his father in Georgia cotton fields at the young age of five.

3. The Defendant vividly remembers the tumultuous relationship between his parents, marked by both verbal and physical abuse. He recounts his father's battle with alcoholism, which led to the physical abuse of his mother, himself, and his siblings. His formative years were characterized by constant berating and physical mistreatment at the hands of his father.

4. Growing up in racially segregated South Georgia, Mr. McHomes faced years of discrimination and racial prejudices. He attended segregated schools and, upon integration in high school, endured taunting and extreme racial abuse.

5. Mr. McHomes graduated high school in 1972 and immediately joined the service. He was an active duty member for two years where he was stationed in Vietnam. The Defendant tragically learned of his father's suicide in 1974 at the age of 20 upon returning from combat in Vietnam.  He was released to the reserve service for one year and he re-enlisted to the active duty navy and was stationed in multiple duty stations thereafter for twenty years. Mr. McHomes's military service spanned various deployments, including Vietnam, Kuwait, and the Gulf War. His involvement in the repatriation of bodies from the Gulf War left lasting scars, contributing to nightmares, claustrophobia, and ongoing PTSD.

6. Mr. McHomes was exposed to Agent Orange, a toxic chemical deployed in Vietnam to disrupt vegetation. As a Blue Water sailor stationed on a ship, Mr. McHomes drank contaminated water which impacting him both medically and physically.

7. The lingering effects of Mr. McHomes's exposure include ongoing nightmares, emotional outbursts, and sleep disturbances, all stemming from the PTSD he developed during his "Red Combat" experiences. Despite lacking training in handling deceased individuals, he was compelled to work with them due to operational limitations, vividly recalling the shortage of caskets, necessitating the use of food freezers, which marked the onset of his night terrors.

8. During the Gulf War, off the coast of Haifa Israel on November 22, 1990, coincidentally on his son's birthday, a tragic incident unfolded. An Israeli ship to shore boat capsized, resulting in the loss of 22 lives. Mr. McHomes, tasked with bringing the bodies back to the US, faced the heartbreaking duty of presenting the remains of a 22-year-old sailor, a close friend who had shared ships berthing with him. Each step of this journey involved opening caskets and placing ice in the bodies, contributing to the development of claustrophobia. The memories of being confined in a plane with 22 deceased shipmates continue to haunt him, manifesting as nightmares and flashbacks. Subsequently, in 1993, deeply affected by his experiences during the Gulf War, Mr. McHomes made the decision to retire.

9. In recognition of his exemplary service in the Navy, Mr. McHomes received the following medals: National Defense Service Medal with Bronze Star; Vietnam Service Medal; Vietnam Campaign Medal; Navy Unit Citation; Navy Achievement Medal with two Gold Stars; Sea Service Deployment Ribbon with four Bronze Stars; Meritorious

Unit Commendation with two Bronze Stars; Kuwait Medal; Liberation Medal; Navy Unit Commendation; Southwest Asia Service Medal, and four Navy Good Conduct Awards for the period ending October 4, 1991.

10. Since 2009, Mr. McHomes has been actively engaging in therapeutic services provided by the Veteran's Affairs. Formally diagnosed with PTSD during that year, he gained insight into how the disorder significantly affected his day-to-day functioning. Notably, Mr. McHomes can recall experiencing symptoms of PTSD as early as 1990.

11. Utilizing substances as a coping mechanism for PTSD, Mr. McHomes began drinking leading to hospitalization for suicidal ideations.

12. Childhood issues and witnessing violence led Mr. McHomes to drugs and alcohol. The evolving understanding of addiction as an affliction rather than a conscious lifestyle choice aligns with his journey.

13. Social and scientific views of addicts and their addiction have evolved from "you brought it on yourself" to recognition that it is an affliction rather than a conscious lifestyle choice.

14. The Defendant bears the heavy burden of 100% disability, grappling with challenges such as peripheral neuropathy, lumbosacral strain accompanied by degenerative disc disease, type II diabetes, and degenerative arthritis of the spine, hypertension, hypothyroidism, and the weight of PTSD.

15. The Defendant, grappling with significant vulnerabilities and disabilities, has unfortunately become a target for fraudulent activities. These vulnerabilities not only pose immense physical and emotional challenges but also make the Defendant susceptible to financial exploitation by unscrupulous individuals seeking to take

advantage of his difficult circumstances. Such instances of fraud further compound the already burdensome difficulties faced by the Defendant, exacerbating the impact on his well-being.

16. Tragically, in 2019 the Defendant, due to their vulnerabilities and disabilities, was manipulated and convinced by an alleged tax analyst to part with $9,000 under the guise of securing the funds in a tax escrow account with the IRS, with the Defendant as the purported owner. This deceptive act underscores the Defendant's susceptibility to manipulation, as their complex health conditions may impact their full understanding and awareness of the potential ramifications. The incident not only resulted in a financial loss but also highlights the urgent need for protective measures to shield the Defendant from exploitation, given their heightened vulnerability to such schemes.

17. Unfortunately, this distressing situation is further compounded by the fact that the Defendant had previously fallen victim to a separate scam in 2019, where they were deceived and lost a significant sum of $15,000. This pattern of exploitation underscores the Defendant's heightened vulnerability and susceptibility to fraudulent schemes. It is a stark reminder of the need for increased vigilance and protective measures to shield the Defendant from financial exploitation, especially considering their challenges in fully comprehending and navigating the complexities of such transactions due to their disabilities.

18. Similar to the events unfolding in this criminal case, the Defendant has experienced numerous instances of being taken advantage of due to their vulnerabilities, including their inability, PTSD, and multiple physical ailments. These challenges have placed the

Defendant in financially precarious situations, compelling them to place trust and belief in others who purportedly offered assistance.

## CIRCUMSTANCES OF THE OFFENSE

1. Ultimately, this Court must impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). These purposes include the need for the sentence to reflect the seriousness of the offense, to provide just punishment, to afford adequate deterrence, and to protect the public. *See* § 3553(a)(2)(A)–(C). Other factors for consideration include the nature and circumstances of the offense, the history and characteristics of the defendant, and any relevant policy statements issued by the Sentencing Commission. *Id.* § 3553(a)(1), (5). This Court holds the sole discretion as to the application and consideration of each of these factors. See *United States v. Kuhlman*, 711 F.3d 1321, 1327 (11th Cir. 2013); *see also United States v. Johnson*, No. 18-11327, 2018 WL 6622174, at *4 (11th Cir. Dec. 17, 2018).

2. The Federal Sentencing Guidelines Manual allows a Downward Departure pursuant to §4A1.3(b)(1) "Standard for Downward Departure. If reliable information indicates that the Defendant's criminal history category substantially over-represents the seriousness of the Defendant's criminal history or the likelihood that the Defendant will commit other crimes, a downward departure may be warranted.

3. In the instant filing the Defendant acknowledges the challenges in their life journey and the regrettable choices influenced by substance abuse and emotional trauma. Mr. McHomes is an individual whose life has been marked by emotional hardships and struggles. The narrative of his experiences illustrates a person grappling with numerous emotional and mental facets, contributing to decisions that, while regrettable, reflect the

complexity of his circumstances. It is crucial to recognize that, while not excusing his actions in this case, the struggles faced by Mr. McHomes call for consideration in mitigating a projected guideline sentencing range of 46-57 months (37-46 months if the court were to grant the minor role request). Simply put, a guideline sentence would be far greater than necessary to meet the statutory sentencing objectives.

Respectfully submitted,

*/s/ Kenneth L, Weisman*
Kenneth L. Weisman
Florida Bar No. 502049
Counsel for the Defendant
1571 NW 13 Court
Miami, Florida 33125
Telephone No.: (305) 326-0330
klwfam@bellsouth.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically via CM/ECF system with the Clerk of Court and electronic copies furnished to all counsel of record this 1st day of February 2022.

By:   */s/ Kenneth L. Weisman*
      Kenneth L. Weisman